IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SENATOR OPHELIA FORD, WILLIAM MARTIN SUGGS, PAUL F. LOWE, GWENDOLYN ELLERSON, LOUVENIA HAMPTON, And NAOMI B. TATE | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:06-CV-2031 |
| THE TENNESSEE SENATE (composed of SENATORS MAE BEAVERS, DIANE BLACK, JIM BRYSON, TIM BURCHETT, RUSTY CROWE, RAYMOND FINNEY DAVID FOWLER, BILL KETRON, RANDY MCNALLY, JEFF MILLER, MARK NORRIS,CURTIS S. PERSON, JR, RON RAMSEY, STEVE SOUTHERLAND, JIM TRACY, MICHAEL R. WILLIAMS, JAMIE WOODSON, KATHRYN I. BOWERS, CHARLOTTE BURKS, STEPHEN I.COHEN, JERRY W. COOPER, WARD CRUTCHFIELD, THELMA HARPER, JOE M. HAYNES, DOUGLAS HENRY, ROY HERRON, DOUG JACKSON, TOMMY KILBY, ROSALIND KURITA, JAMES F. KYLE, JR., DON MCCLEARY, JOHN S. WILDER and PLAINTIFF, OPHELIA FORD, all in their official capacity) AND LT. GOV. JOHN S. WILDER | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

---

**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTION UNDER THE FEDERAL VOTING RIGHTS ACT.**

---

COME the Plaintiffs, by and through their counsel, and file this Second Amended Complaint against the Defendants for a declaratory judgment and an injunction pursuant to the Due Process

1

and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; 42 U.S.C. Sections 1971, 1973, and 1983; and Article IV, Section 1 of the Tennessee Constitution, arising out of a control election in the Tennessee Senate.  In support of their Complaint, Plaintiffs would show as follows:

## I.   Jurisdiction

This matter involves a federal question in a civil action arising under the constitution and laws of the United States of which district courts have original jurisdiction. 28 UCS § 1331 & 42 U.S.C. 1983.  In addition, this Court has original jurisdiction over certain civil rights matters pursuant to 28 USC § 1343, and specifically 42 USC § 1971 and 1973. This Court has pendent and supplemental jurisdiction over the Tennessee Constitution-based claim under 28 U.S.C. 1367(a) because it is closely related to the federal law claims in this case.

## II.  Venue

Venue in the United States District Court of the Western District of Tennessee is proper pursuant to 28 USC § 1391 in that (1) at least six of the Defendants reside in this district and all Defendants reside in the state of Tennessee, (2) a substantial part of the events or omissions giving rise to the claim occurred in this district, and (3) it is a judicial district in which any Defendant may be found.

## III. Parties

2

1.     Plaintiff Ophelia Ford is a duly elected and certified State Senator, residing in Memphis, Tennessee, having been elected by the voters in a Senate District 29 Special Election held on September 15, 2005, and certified by the Shelby County Election Commission.  Ford is also a resident citizen of Shelby County, Tennessee and Senate District 29, and voted in the September 15, 2005 Special Election.

2.     Plaintiff William Martin Suggs is a resident citizen of Shelby County, Tennessee and Senate District 29, and voted in the September 15, 2005 Special Election.  Mr. Suggs is black.

3.     Plaintiff Gwendolyn Ellerson is a resident citizen of Shelby County, Tennessee and Senate District 29, and voted in the September 15, 2005 Special Election.  Gwendolyn Ellerson is black.

4.     Plaintiff Paul F. Lowe is a resident citizen of Shelby County, Tennessee and Senate District 29, and voted in the September 15, 2005 Special Election.  Mr. Lowe is black.

5.     Plaintiff Louvenia Hampton is a resident citizen of Shelby County, Tennessee and Senate District 29, and voted in the September 15, 2005 Special Election.  Mrs. Hampton is black.

6.     Plaintiff Naomi B. Tate is a resident citizen of Shelby County, Tennessee and Senate District 29, and voted in the September 15, 2005 Special Election.  Ms. Tate is black.

2.      Senator Ford won the special election by a margin of thirteen votes out of more than eight thousand votes cast, and her election was certified by the Shelby County Election Commission to the State Coordinator of Elections.

3.      Roland contested the election by filing a complaint in the Tennessee State Senate which has jurisdiction over election disputes involving members of the Senate pursuant to the Tennessee Constitution.

4.      Roland has asserted that the Senate should void the election under the standards of review established by the Tennessee Supreme Court case of Emery v. Robertson County Election Commission, 586 S.W. 2d 103 (Tenn. 1979), which allows courts to void an election in two cases, (1) "where the evidence reveals the number of illegal ballots cast equals or exceeds the difference between the two candidates receiving the most votes," and (2) "on a sufficient quantum of proof that fraud or illegalities so permeated the conduct of the election to render it incurably uncertain, even though it cannot be shown to a mathematical certainty that the result might have been different." Emery, at pp 108-109. In its Resolution proposing to void the election, the Senate purports to apply this legal standard.

5.      Roland has alleged a number of voting irregularities, only some of which have been acknowledged by the Coordinator of Elections. Specifically, the State Coordinator of Elections, after

5

7.   Defendant, The Tennessee Senate is one arm of the Legislative Branch of the State of Tennessee and is composed of Senators Mae Beavers, Diane Black, Jim Bryson, Tim Burchett, Rusty Crowe, Raymond Finney, David Fowler, Bill Ketron, Randy McNally, Jeff Miller, Mark Norris, Curtis S. Person, Jr., Ron Ramsey, Steve Southerland, Jim Tracy, Don McCleary, Jamie Woodson, Kathryn I. Bowers, Charlotte Burks, Stephen I. Cohen, Jerry Cooper, Ward Crutchfield, Thelma Harper, Joe M. Haynes, Douglas Henry, Roy Herron, Doug Jackson, Tommy Kilby, Rosalind Kurita, James F. Kyle, Jr., Michael R. Williams, Ophelia Ford and John Wilder.  The Tennessee Senate can be served with process through their official representative, Lt. Gov. John Wilder, in Legislative Plaza, Nashville, Tennessee.

8.   Lt. Gov. John Wilder is also sued in his official capacity as Speaker of The Tennessee Senate.  Lt. Gov. Wilder signs and authenticates all bills and resolutions passed by The Tennessee Senate.

## IV.  Allegations

1.   Plaintiff Ophelia Ford was the Democratic nominee for election to the Tennessee State Senate in a Special Election held in Memphis, Tennessee on September 15, 2005.  Her primary opponent was the Republican nominee Terry Roland ("Roland"), although there was also an independent on the ballot.

4

conducting an investigation, determined that six voters voted who were not eligible: specifically, three convicted felons, two voters who were apparently deceased at the time of the election, and one voter who voted but did not live in the district.  In addition, questions were raised about a fourth person on diversion who may or may not have been eligible as a convicted felon, and one other voter who apparently voted in the wrong precinct but was an eligible voter in District 29.

6.      In addition to the above, Roland presented hearsay evidence gleaned from internet data files which suggested but did not prove that up to forty-four voters may have voted in districts in which they did not reside or at business locations where they were not eligible to vote.  Forty-one of these voters are listed as black on the Shelby County Election Commission records, three as "other" race and none as white.

7.      Roland further raised a question regarding ninety voters who apparently did not sign both the poll book and the appropriate application for ballot.

8.      Upon filing the Complaint in the Senate, the Lt. Governor and Speaker of the Senate, John Wilder referred the matter to a Special Ad Hoc Committee of the Senate Chaired by Senator Mike Williams, a Republican.  The Special Committee met several times in Memphis and Nashville and received documents and arguments from

6

the parties, including Roland, Ford and the State Coordinator of Elections, Brook Thompson.

9.     The Special Ad Hoc Committee met on January 9, 2006, and voted to continue its proceedings pending a report from the Tennessee Bureau of Investigation and further investigation by the Coordinator of Elections of the Social Security Administration Death List.

10.    The Coordinator of Elections, Brook Thompson, testified at various meetings at the Ad Hoc Committee to the effect that the Election Committee could verify only six improper votes and did not find any pattern or practice of criminal or illegal behavior or mistakes by the Election Commission which warranted setting aside the election. No allegation was ever made that the Plaintiff Ophelia Ford, her family or her campaign organization had anything to do with these voting irregularities.

11.    Brook Thompson further testified that the approximately forty-one persons who did not sign both the poll book and the application for ballot should not be disqualified because these mistakes should have been caught by polling officials, and there was sufficient evidence that the voters were the ones who were eligible to vote and who did in fact vote.  Plaintiffs William Martin Suggs, Louvenia Hampton, and Gwendolyn Ellerson are in this category of potentially disenfranchised voters.

12.    As for the residency issue raised with respect to forty voters, Coordinator Thompson explained during the Senate hearing that the law relating to the "domicile" of voters was expansive enough to encompass a wide range of circumstances and involved a determination of the intent of a voter, and he did not have enough evidence to say that any of these questioned voters had improperly voted at the addresses indicated.  Plaintiff Naomi Tate is in this category of potentially disenfranchised voters.

13.    During the course of his testimony, Brook Thompson explained that neither his office nor the Shelby County Election Commission or similar election commissions routinely investigate voter residence issues unless raised at a poll on election day.

14.    Notwithstanding the recommendation of the Ad Hoc Committee, Senator Ron Ramsey filed a Resolution with the Senate calling for the Special Election to be void.  In support of that Resolution, Senator Ramsey and others indicated that there was no reason to wait for further evidence and that the allegations regarding residency and mistakes by the polling officials with regard to signing both the polling poll book and the application for ballots were sufficient to call the election into question without specific evidence of wrongdoing by voters.  He specifically referred to a case cited in one of Terry Roland's briefs, a 1954 Kentucky Supreme Court decision, that suggested that errors by

polling officials could be attributed to individual voters in invalidating an election.

15.     On January 17, 2006, the Senate sitting as a Committee of the Whole, voted 17-14 for Senator Ramsey's Resolution.  Under the rules of the Senate, the Committee's recommendation will be presented to the Senate on the morning of Thursday, January 19, 2006, for a vote.  If the vote passes, the Resolution will void the Special Election and will unseat Senator Ford.

16.     The result of the decision to void the election does not mean that a new special election will be held.  According to the State Attorney General, an interim Senator will be appointed by the Shelby County Commission, which has a majority of Republican members, and that person will hold the seat until the next scheduled general election.  If the Attorney General is correct in this matter, the voters in district 29 will have no participation in that decision.  The Senate is proceeding on this basis. For this reason, the Senate Resolution in this case both voids the election results and refers the matter of District 29's representative to the Shelby County Commission.

17.     The action of the Senate in voiding the special election hinges upon its determination that approximately one hundred and forty voters in Senate District 29 were ineligible to vote because of unproven residency and mistakes caused by election officials. In taking this action, the Senate is failing to make a similar

9

determination regarding other, similarly situated voters in Senate District 29.

18.     Senate District 29 is drawn in such a manner that approximately seventy percent of the eligible voters are African-American.  Senator Ford is African-American and her two opponents in the election were white. The 140 voters referred to in the above paragraph are disproportionately, if not overwhelmingly, African-American. The actions of the Senate unfairly discriminate against Senator Ford, the African-American Plaintiffs, on account of their race.

19.     As stated by the Coordinator of Elections, Brook Thompson, the standards and procedures for reviewing the eligibility of voters in District 29 are substantially different than those that are applied by the Shelby County Election Commission and the State Coordinator of Election in other such cases throughout the state in determining qualifications to vote and to have that vote counted.

20.     The Senate vote to void the election denies the right of individuals such as the Plaintiffs to be eligible to vote and have their vote counted.

21.     No other votes in any Senate District other than 29, would be deemed ineligible to vote by state election officers because of residency requirements without some minimal due process. Here the Senate is acting to disenfranchise certain voters, indeed

indirectly all of the voters of Senate District 29, because of mere allegations relating to residency.

22.     No other voters in any other Senate District other than 29 would have been deemed ineligible to vote by state official because of their failure to sign both the poll book and the application for ballot, and a strict standard has never apparently been applied to disenfranchise voters because of the errors of election officials.  Indeed, local election commissions which are computerized, such as Shelby County, have the option to require one or the other but not both.  TCA § 2-7-112(2).

## V.     Causes of action

23.   The Proposed actions of the Defendants described above would constitute arbitrary and disparate treatment of member of the electorate denying their fundamental right to vote, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. 1971(a)(2)(A). See Bush v. Gore, 531 U.S. 98 (2000) and Dunn v. Blumstein, 405 U.S. 330, 343 (1972).

24.   The proposed actions of the Defendants described above would be arbitrary, would be imposed without proper notice to Plaintiffs, would punish Plaintiffs for the omissions of election officials, and would deprive Plaintiffs of a liberty interest protected by the fourteenth amendment, all in violation of the

Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

25.   The Defendants' proposed action would disqualify a voter based on an error or omission that is not material to determining the voters' eligibility to vote, in violation of 42 U.S.C. 1971(a)(2)(B).

25.   The Defendants' proposed action would deny the right to vote on account of race or color, in violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. 1973 et seq.

26.   The Defendants' proposed actions would disenfranchise voters both based on requirements other than those prescribed by the General Assembly and in a manner which is not equal and uniform across the state, all in violation of the Tennessee Constitution, Art. IV, Section 1.

27.   The above described action would constitute irreparable harm to the Plaintiffs.

PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs seek
(1) a declaratory judgment that the voiding of the Senate District 29 election results as contemplated by the Defendants would violate the Plaintiffs' rights under the federal and Tennessee Constitutions and federal voting rights statutes;
(2) an order enjoining the defendants from voiding the election results;

12

(3) an order enjoining the defendants from

(a) applying standards, rules, or practices which differ from the standards, rules, or practices in effect prior to the election;

(b) disqualifying a voter because of an error, omission or wrongdoing by election officials;

(c) disqualifying a voter because of an error or omission which is not material to determining that voter's eligibility to vote in the election;

(d) applying standards, rules, or practices to one set of voters in the election without ensuring that the same standards, rules, or practices are being applied to all similarly situated voters in the election;

(e) applying standards, rules, or practices to one set of voters without ensuring that the same standards, rules, or practices are being applied to all similarly situated voters in other Senate district races besides District 29;

(f) disqualifying a voter in a manner which would deny or abridge on account of race or color the right of voters to participate in the political process and elect candidates of choice, in violation of Section 2 of the Voting Rights Act;

13

(4) costs and fees as provided under applicable law; and

(5) any other relief deemed appropriate by this Court.

Respectfully submitted,


/s/ David J. Cocke
The Bogatin Law Firm, PLC
David J. Cocke (7988)
1661 International Pl., #300
Memphis, TN 38120
901-767-1234

Attorneys for Plaintiffs

Of Counsel:
Steven J. Mulroy
207 Humphreys, Univ. Memphis
Memphis, TN 38152


## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2006, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail or email. Parties may access this filing through the Court's electronic s\filing system.

John Ryder, Esquire
2700 One Commerce Square
Memphis, Tennessee 38103


Paul Summers
William Helou
Janet M. Kleinfelter
Office of the Attorney General
Post Office Box 20207
Nashville, Tennessee 37202


/s/ David J. Cocke
David J. Cocke
Attorney for the Plaintiffs

14