IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SENATOR OPHELIA FORD, WILLIAM MARTIN SUGGS, PAUL F. LOWE, GWENDOLYN ELLERSON, LOUVENIA HAMPTON, And NAOMI B. TATE<br><br>    Plaintiffs,<br><br>v.<br><br>THE TENNESSEE SENATE (composed of SENATORS MAE BEAVERS, DIANE BLACK, JIM BRYSON, TIM BURCHETT, RUSTY CROWE, RAYMOND FINNEY DAVID FOWLER, BILL KETRON, RANDY MCNALLY, JEFF MILLER, MARK NORRIS,CURTIS S. PERSON, JR, RON RAMSEY, STEVE SOUTHERLAND, JIM TRACY, MICHAEL R. WILLIAMS, JAMIE WOODSON, KATHRYN I. BOWERS, CHARLOTTE BURKS, STEPHEN I. COHEN, JERRY W. COOPER, WARD CRUTCHFIELD, THELMA HARPER, JOE M. HAYNES, DOUGLAS HENRY, ROY HERRON, DOUG JACKSON, TOMMY KILBY, ROSALIND KURITA, JAMES F. KYLE, JR., DON MCCLEARY, JOHN S. WILDER and PLAINTIFF, OPHELIA FORD, all in their official capacity) AND LT. GOV. JOHN S. WILDER<br><br>    Defendants. | No. 2:06-CV-2031 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENJOIN DEFENDANTS
PURSUANT TO FED. R. CIV. P. 62, 65 AND FED. R. APP. P. 8**

COME the Plaintiffs, by and through their counsel, and file this memorandum of law

1

in support of their motion to enjoin the Defendants pursuant to Rules 62 and 65 of the Federal Rules of Civil Procedure and Rule 8 of the Federal Rules of Appellate Procedure.

## I. FACTS

As provided in the sworn third amended complaint filed by Plaintiffs, on April 13, 2006, the Ad Hoc Committee of the Senate met for the last time to review the evidence relating to the election contest regarding the Special Election for District 29 and to make its recommendation to the Senate. For the first time it released and reviewed the responses to the letters that it had sent to the 44 voters whose residency had been challenged, but, despite a timely request from Plaintiffs, it did not make the documents, including the affidavits submitted, immediately available to the Plaintiffs and have not yet done so.

The affidavits were returned in response to a questionnaire sent by the Senate with ambiguous questions. The affidavit form asks for the person's "residence" and then ask for another residence the voter considers to be a "permanent residence." These terms are not explained, and the form does not give the voter any opportunity to explain any discrepancy between the two residences.

At the conclusion of the meeting, the Ad Hoc Committee identified 12 "illegal" votes as follows: (a) two votes of apparently deceased persons; (b) one vote of a person whose voting records indicated he lived outside the district; (c) the votes of seven felons, including Plaintiff Michael Cortez Davis and one person placed on diversion for a felony who was not deemed voting-ineligible by the Coordinator of Elections; (d) one vote of a voter who supposedly "admitted" in an affidavit returned to

2

the Committee but not shared with the Plaintiffs which was apparently returned in response to the Senate's notice, to the effect that he did not reside in the district at the time of the election; and (e) one vote of Bernard Jennings whose vote was discounted because of hearsay statements that he had apparently made to a reporter of the Memphis Commercial Appeal which ambiguously implied that he was not a resident of the district when he voted. A copy of the newspaper article in email format that was presented to the Committee as "evidence" by Roland's counsel is attached to the Plaintiffs' third amended complaint. Notwithstanding the fact that the members of the Committee could only come up with 12 "ineligible" voters in an election won by Sen. Ford by 13 votes, the Committee nonetheless found that the facts justified setting aside the election.

As a result, the Tennessee Senate is poised to act in a manner inconsistent with this Court's order of February 1, 2006, and void the Special Election of District 29 as early as Monday, April 17 at 5 p.m. and no later than Wednesday, April 19, at 9 a.m.

## II. THE TENNESSEE SENATE'S PROCEDURES DO NOT CONFORM TO THE GUIDELINES SET BY THIS COURT'S ORDER OF FEBRUARY 1, 2006

Upon Defendants' motion to dismiss, this Court entered an order dated February 1, 2006, which required the Tennessee Senate to follow various procedures, including:

1. Adopt and articulate a consistent standard that meets the requirements of the Equal Protection Clause of the Fourteenth Amendment, namely a standard which is uniform, non-arbitrary and objective;

2. Provide the constituents, including the citizens whose places of residence are being challenged, of Senate District 29 with adequate notice and opportunity to be

3

heard before any prospective disenfranchisement in accordance with the requirements of the Due Process Clause of the Fourteenth Amendment; and

    3 Conduct the Roland/Ford election contest with the same standards utilized across the state of Tennessee in accordance with the Due Process and Equal Protection Clauses of the Fourteenth Amendment and Article IV, § 1 of the Tennessee Constitution and avoid the use of a different standard post-election for judging the ballot than was applied pre-election.

### II.A  LACK OF A UNIFORM, NON-ARBITRARY, AND OBJECTIVE STANDARD

Under the Fourteenth Amendment's Equal Protection Clause, any alleged infringement of the right to vote must withstand the "meticulous scrutiny" required by the Supreme Court in Reynolds v. Sims, 377 U.S. 533 (1964). As this Court pointed out, Order at 18-19, this scrutiny not only extends to casting a ballot but the entire voting process, including election contests. Id. at 555; Bush v. Gore, 531 U.S. 98 (2000).

When this Court issued its order on February 1, 2006, it noted that the Tennessee Senate failed to articulate any standard to void the election or disqualify votes, let alone meet the requirements of the Equal Protection Clause with a uniform, non-arbitrary and objective standard. Order at 17-18. There is still nothing uniform about the standards utilized by the Tennessee Senate in Roland/Ford election contest.

First, for alleged non-resident voters of Senate District 29, the Senate published a notice in local newspapers (attached the Plaintiffs' third amended complaint) listing the names of only 44 voters for District 29. The 44 voters have been singled out for an extra burden on their franchise, a burden which has not been placed on any other voter

4

in District 29 or in any other Senate District. This is so despite the fact that the Senate had been notified of other voters with some evidence that they had moved prior to the election.

These same individuals were mailed a notice letter (attached to the Plaintiffs' third amended complaint) with an enclosed affidavit (attached to the Plaintiffs' third amended complaint). The notice letter indicates that failure to sign and return the enclosed affidavit may be understood as evidence that the addressee's voting residence in the voting records is inaccurate.

Second, the Senate utilized a hearsay newspaper article about a man named Jennings Bernard, one of the individuals who was mailed a notice and affidavit and listed on the published notice. In the article, Bernard is quoted as claiming to have lived outside of the District and yet voted in the Special Election. Even the reporter of the conversation admitted that residency for voting purposes in Tennessee is a "gray" area, and the article states that Mr. Bernard sent to the Committee an affidavit that stated that his permanent address was in the district. For some reason, that affidavit was not listed on the Committee's spreadsheet and may not have been delivered to the Committee. Mr. Bernard was not confronted with this "evidence" and given an opportunity to explain or refute it and no other evidence relating to Mr. Bernard was presented to the Committee. This Court has specifically warned the Senate to "make decisions on residency and domicile based on factual proof rather than conjecture." Order at 21. Disenfranchising a voter based on one newspaper article, without affording the voter an opportunity to be heard, is clearly inconsistent with that part of the

Court's order.

## II.B.  INADEQUATE NOTICE AND OPPORTUNITY TO BE HEARD FOR THE CONSTITUENTS OF SENATE DISTRICT 29

1. <u>Notice Generally</u>.  Even if the Senate was only required to send notice to the 44 alleged non-resident voters, which Plaintiffs do not concede, those voters were given an inadequate opportunity to be heard.  Instead, they were presented with only an affidavit to return which ambiguously asks for the person's "residence" and then asks for another residence the voter considers to be a "permanent residence."  They were given no notice of a hearing on the contest of their votes.  The affidavit does not provide an opportunity for any explanation of a discrepancy.  Further, the Senate states that a voter's failure to send the affidavit in (i.e. a lack of evidence) will be considered as evidence of non-residency.  As this Court points out in its order of February 1, Order at 21, hearings are required so that the Senate may make decisions on residency "based on factual proof rather than conjecture."  It necessarily follows that conclusions drawn from an ambiguous affidavit (or lack of an affidavit) can only result in conjecture. Therefore, the purpose of this Court's order requiring that the constituents of Senate District 29 be given an opportunity to be heard has been defeated.

2. <u>Felons</u>.  Plaintiffs contend that the seven voters who are challenged as being felons (and therefore lacking voting rights) should have been given the same Due Process protection as the alleged non-resident voters.1  If a person has been convicted of a felony, it does not mean *per se* that such person is ineligible to vote as the Senate would argue.  One such example is the most recently added Plaintiff, Mr. Michael

---

1  At least one of the seven former felon voters was a person placed on diversion, who was *not*

6

Cortez Davis.  Mr. Davis is a resident of District 29 and was convicted of a felony in the

State of Minnesota.  (See Davis Affidavit filed in this cause).  Minnesota has a voters'

bill of rights which provides that "[f]or all persons residing in this state who meet federal

voting eligibility requirements . . . [i]f you have been convicted of a felony but your

felony sentence has expired (been completed) or you have been discharged from your

sentence, you have the right to vote."  Minn. Stat. § 204C.08 (2005); see also Minn.

Stat. § 201.071 (2005).

> Further, Tenn. Code Ann. § 2-19-143 provides in relevant part as follows:

> No person who has been convicted in another state of a crime or offense
> which would constitute an infamous crime under the laws of this state,
> regardless of the sentence imposed, shall be allowed to register to vote or
> vote at any election in this state unless such person has been pardoned or
> restored to the rights of citizenship by the governor or other appropriate
> authority of such other state, or the person's full rights of citizenship have
> otherwise been restored in accordance with the laws of such other state, or
> the law of this state.

Tenn. Code Ann. § 2-19-143(3) (2003) (emphasis added).  Mr. Davis completed his

sentence for his felony conviction in Minnesota which is evident by the documents

presented to the Committee showing his release from custody in 1996.  (See also Davis

Affidavit).  Therefore, his rights of citizenship have been restored by operation of law in

another state, and Tennessee law says that "he shall be allowed to register to vote."

But because of the Senate's failure to give Mr. Davis and the other six felons notice and

an opportunity to be heard, no explanations from these citizens have been proffered or

investigated with respect to these seven votes.

Mr. Davis' situation is but one of many possible scenarios under which a person

---

deemed voting ineligible by the Coordinator of Elections.

who has committed a felony in the past may vote in the present. Another such example could be that a person convicted of a felony in Tennessee has been pardoned by the governor of Tennessee. Tenn. Code Ann. § 2-19-143(1) (2005). Again, because of the Senate's failure to question any of the alleged invalid votes, there is no explanation for these votes being rejected as invalid. By assuming that a vote cast by a felon is *per se* invalid, the Senate has acted in a manner that is inconsistent with Due Process requirements, the order of this Court, and the law of Tennessee as codified in Tenn. Code Ann. § 2-19-143.

Moreover, the Tennessee Constitution provides that no one shall be stripped of the franchise except upon conviction by a jury of a felony. Tenn. Const. Art. I, § 5. The record suggests that the felon voters pled guilty and were not convicted by a jury. (See Affidavit of David J. Cocke). This is yet another argument that a felon voter could legitimately make if given notice and an opportunity to be heard.

## II.C. UTILIZING A DIFFERENT STANDARD POST-ELECTION THAN THAT IN PLACE PRE-ELECTION

This Court made it clear that in conducting this election contest, the Tennessee Senate "may not adopt post-election standards for judging the validity of votes that are different from pre-election standards or practices employed to determine a qualified voter." Order at 19. In the current case, the Senate utilized two forms of evidence which have not been implemented in the past. The first was a hearsay newspaper article about Jennings Bernard, a person who ran against Senator Ford in the election primary. The Senate accepted this unsworn hearsay as evidence to throw out Mr.

8

Bernard's vote without any testimony from or cross-examination of Mr. Bernard. Not only is this in violation of this Court's specific order that both notice and a hearing be afforded a voter before being disenfranchised, Order at 12, it also violates this Court's general requirement, based on federal Due Process decisions, that post-election voting standards and practices be the same as those in effect at election time. See Order at 18-19, 22.

Additionally, the Senate utilized the affidavit of Allen Pride who stated in his affidavit that he voted in the District 29 election but was not a resident there. (See Third Amended Complaint). Assuming that the affidavit (which asks for the person's residence and then asks for the person's permanent residence) is not ambiguous, the taking of evidence in this manner is unprecedented and not in conformity with the standards for disqualifying votes of prior election contests. The Tennessee Senate has yet to provide copies of this affidavit of Mr. Pride to the Plaintiffs.

With respect both to Mr. Pride and Mr. Bernard, the Senate's actions violate Due Process in a far more profound way. Even if each voter targeted for disenfranchisement based on residency was sent a non-ambiguous affidavit and afforded an actual hearing, the fact that these voters are being required to fill out affidavits at all constitutes a radical departure from past election practice, including the practice in effect at the time of the election and the practice in effect in other Senate districts. This Court has previously heard the testimony for state and county election officials, which indicated that there are only two mechanisms for disenfranchising a voter based on a residency issue: either (a) a challenge adjudicated by Election Judges

9

(precinct workers) at the polling place on election day, or (b) the administrative process by which a voter is placed on the "inactive list" for two election cycles, during which time the voter has an opportunity to explain himself. This new practice of sending such voters letters after the election requiring them to reaffirm their voting eligibility is a radical departure from past election practice.

Finally, the most glaring error by the Senate and the most blatant use of a different standard post-election is the attempt by the Senate to say that12 equals 13. Senator Ford won the election of District 29 by a margin of 13 votes. The standard for voiding an election in Tennessee has been articulated by the Tennessee Supreme Court in Emery v. Robertson County Election Commission as follows: "The reported decisions of this State uniformly authorize the courts to void an election where the evidence reveals that the number of illegal ballots cast equals or exceeds the difference between the two candidates receiving the most votes. The rule is based upon the rationale that if all of the illegal votes had been cast for the unsuccessful candidate the result would have been changed." Emery v. Robertson County Election Commission, 586 S.W.2d 103, 108-09 (Tenn. 1979). Therefore, in order to have a basis to void the Special Election for District 29, Tennessee requires that the number of illegal ballots must be the margin of victory: thirteen votes.

After reviewing the challenged votes one-by-one (utilizing the hearsay evidence of the newspaper article about Mr. Bernard and the ambiguous affidavit of Mr. Pride), the Senate was only able to allege 12 problematic votes. These included the two deceased voters (which Plaintiffs do not contest and accept as erroneously counted),

10

one voter the election commission said lived outside of the district, seven felon voters
(who Plaintiffs assert did not receive the proper Due Process protections of notice and
an opportunity to be heard), Mr. Pride's unclear affidavit stating his residence was not
located in District 29, and Mr. Bernard's vote (which Plaintiffs assert was improper
hearsay evidence). This adds up to 12 votes. Again, the margin of victory for Senator
Ford (and the number of votes required to void an election) is 13 votes. Because 12
can never equal 13, the Senate has applied a procedural standard post-election which
is different from the procedural standards in place pre-election.

The Senate apparently purports to rely in the alternative on the second prong of
the Emery case, the one which provides for voiding the election if "fraud or illegality so
permeated the conduct of the election as to render it incurably uncertain, even though it
cannot be shown to a mathematical certainty that the result might have been different."
Emery, 586 S.W.2d at 109. As the Attorney General recognized before this Court, this
reliance is misplaced. This standard was designed for situations involving systematic
fraud or a widespread breakdown such that the legitimacy of the entire election is called
into serious question but it is impossible to say how many votes were affected.
Examples would include such cases as where the polls closed two hours early; or the
machines in dozens of precincts were inoperative for large portions of the day; or that
there is evidence of a conspiracy among a large number of individuals to commit wide-
ranging fraud. No such situation applies here.

Indeed, the unrebutted evidence before this Court from the prior hearing
demonstrates that the types of election glitches targeted by the current Senate

11

Resolution are common throughout Shelby County, District, 29, and the State. This is the most scrutinized election in Tennessee history, and yet there are only a handful of votes called into question. This does not rise to the level of an election "permeated" with "fraud or illegality" as to render it "incurably uncertain."

As this Court pointed out, Order at 16-17, the Tennessee Supreme Court has made it clear that "not every combination of irregularities" or "technical nonconformity with election statutes" will require invalidation. Order at 16-17, citing Forbes v. Bell, 816 S.W.2d 716, 720 (Tenn. 1991). In Forbes, the case relied on by this Court, the Tennessee Supreme Court held that a complaint could not make out a claim under Emery even despite alleging "wholesale disregard of the election laws" which resulted in 861 illegal ballots, because the Tennessee courts could not determine that the number of illegal votes exceeded the margin of victory. Thus, even where the court assumes "wholesale disregard" affecting almost 1000 votes, the Tennessee courts require that plaintiff meet the first prong of Emery.

### III. DECLARATORY AND INJUNCTIVE RELIEF

Federal courts do not render advisory opinions. That is why the Declaratory Judgment Act requires "a case of actual controversy." The Supreme Court has observed that "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all circumstances, show that there was a substantial

12

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). In District 29, there is a substantial controversy (was Senator Ford validly elected), between adverse parties (District 29 voters and Senator Ford on one side versus the Senate), of sufficient immediacy and reality (the Senate is poised to void the Special Election of District 29 as early as Monday, April 17 at 5 p.m. and no later than Wednesday, April 19 at 9 a.m.). Therefore, declaratory relief is appropriate and authorized.

Injunctive relief requires a balancing of four factors: (i) whether the movant has a strong likelihood of success on the merits; (ii) whether the movant will suffer irreparable harm without the injunction; (iii) whether the issuance of the injunction would cause substantial harm to others; and (iv) whether the public interest would be served by the injunction. Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 325 F.3d 712, 717 (6th Cir. 2003). These four factors need to be balanced; they are not prerequisites. In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985).

Because the Tennessee Senate has decided to proceed in a manner inconsistent with this Court's order of February 1, 2006, the Plaintiffs meet the first requirement for an injunction and have a strong likelihood of succeeding on the merits of their claims.

Next, if the Senate is permitted to void the Special Election of District 29, the voter Plaintiffs will suffer an immediate and irreparable harm by the invalid disqualification of their votes. Further, Senator Ford shall suffer the immediate and

13

irreparable harm of losing her seat in the Tennessee Senate which could have further ramifications to her political status in future elections.

Third, the issuance of an injunction prohibiting the Tennessee Senate from voiding the Special Election of District 29 will cause no foreseeable substantial harm to others.  On the contrary, to permit the Tennessee Senate to proceed with the voiding of the election will cause substantial harm to the voters of District 29 by stripping them of their chosen representative in the Tennessee Senate; if the election is voided, the Shelby County Election Commission, rather than the voters of District 29, will fill the vacant seat.

Finally, and perhaps most compellingly, an injunction issued by this Court prohibiting the Tennessee Senate from proceeding as it intends will act to serve the interests of the public by preserving and protecting the most fundamental civil right in a democracy: suffrage.  Therefore, the issuance of an injunction is the most appropriate remedy given the immediate and imminent circumstances.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs pray for injunctive and/or declaratory relief as articulated in Plaintiffs' motion.

Respectfully submitted,

/s/ David J. Cocke
David J. Cocke (7988)
The Bogatin Law Firm, PLC
1661 International Pl., #300
Memphis, TN 38120
901-767-1234
Attorneys for Plaintiffs

Of Counsel:
Steven J. Mulroy
207 Humphreys, Univ. Memphis
Memphis, TN 38152

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2006, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail or email.  Parties may access this filing through the Court's electronic s\filing system.

John Ryder, Esquire
2700 One Commerce Square
Memphis, Tennessee 38103

Paul Summers
William Helou
Janet M. Kleinfelter
Office of the Attorney General
Post Office Box 20207
Nashville, Tennessee 37202

/s/ David J. Cocke
David J. Cocke
Attorney for the Plaintiffs

4