IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

───────────────────────────────────────────────

SENATOR OPHELIA FORD, WILLIAM      )
MARTIN SCRUGGS, PAUL F. LOWE,      )
GWENDOLYN ELLERSON, LOUVENIA       )
HAMPTON, and NAOMI B. TATE,        )
                                   )
          Plaintiffs,              )
                                   )
v.                                 )        No. 06-2031-BV
                                   )
THE TENNESSEE SENATE (composed     )
of SENATORS MAE BEAVERS, DIANE     )
BLACK, JIM BRYSON, TIM             )
BURCHETT, RUSTY CROWE, RAYMOND     )
FINNEY, DAVID FOWLER, BILL         )
KETRON, RANDY MCNALLY, JEFF        )
MILLER, MARK NORRIS, CURTIS S.     )
PERSON, JR., RON RAMSEY, STEVE     )
SOUTHERLAND, JIM TRACY,            )
MICHEAL R. WILLIAMS, JAMIE         )
WOODSON, KATHRYN I. BOWERS,        )
CHARLOTTE BURKS, STEPHEN I.        )
COHEN, JERRY W. COOPER, WARD       )
CRUTCHFIELD, THELMA HARPER,        )
JOE M. HAYNES, DOUGLAS HENRY,      )
ROY HERRON, DOUG JACKSON,          )
TOMMY KILBY, ROSALIND KURITA,      )
JAMES F. KYLE, JR., DON            )
MCCLEARY, JOHN S. WILDER, and      )
plaintiff OPHELIA FORD, all in     )
their official capacity) and       )
LT. GOVERNOR JOHN S. WILDER,       )
in his official capacity,          )
                                   )
          Defendants.              )

───────────────────────────────────────────────

REPORT AND RECOMMENDATION ON PLAINTIFFS' RENEWED MOTION FOR AN
AWARD OF ATTORNEY FEES, COSTS, AND EXPENSES PURSUANT TO RULE 54

───────────────────────────────────────────────

Before the court is the December 28, 2006 motion of the plaintiffs, Senator Ophelia Ford, William Martin Scruggs, Paul F. Lowe, Gwendolyn Ellerson, Louvenia Hampton, and Naomi B. Tate (collectively the "plaintiffs"), pursuant to Rule 54 of the Federal Rules of Civil Procedure, for an award of attorney fees, costs, and expenses pursuant to 42 U.S.C. §§ 1973*l*(e) and 1988(b), which were incurred in bringing their claims under 42 U.S.C. §§ 1971, 1973, and 1983 against the defendants, the Tennessee Senate (the "Senate") and Lieutenant Governor John S. Wilder ("Lt. Governor Wilder") in his official capacity as Speaker of the Senate (collectively the "defendants").[1] The defendants filed a response in opposition to the motion.

The matter was referred to the U.S. Magistrate Judge for a report and recommendation. A hearing was held on June 20, 2007. For the following reasons, it is recommended that the renewed motion for attorney fees, costs, and expenses be DENIED.

## PROPOSED FINDINGS OF FACT

Plaintiff Ophelia Ford ("Senator Ford") was the Democratic nominee, running against Republican nominee Terry Roland, in a special election for the vacant District 29 seat in the Senate.

---

[1]    The plaintiffs originally filed a motion for attorney fees on February 15, 2006, but the district court granted a motion to stay the proceedings in regards to the attorney fees. On December 28, 2006, the plaintiffs filed their renewed motion for attorney fees.

(2d. Am. Compl. 4, ¶ 1.)   The special election was held on September 15, 2005, and Senator Ford defeated Roland by a thirteen-vote margin.  (2d. Am. Compl. 5, ¶ 2.)  Roland contested the special election results by filing a complaint in the Senate on September 23, 2005,[2] asserting that the special election should be voided because of voting irregularities.[3]   (2d. Am. Compl. 5, ¶¶ 3–5.)  Once the complaint was filed, Lt. Governor Wilder, who is also the Speaker of the Senate, referred the matter to a special election contest committee (the "Special Ad Hoc Committee"), chaired by Senator Mike Williams, to conduct an investigation into Roland's allegations and make recommendations to the Senate.  (2d. Am. Compl. 6, ¶ 8.)

On January 17, 2006, before the Special Ad Hoc Committee completed its investigation, Senator Ron Ramsey filed a proposed resolution with the Senate, S. Res. 7002A, 104th Gen. Assem., 1st Extraordinary Sess. (Tenn. 2006) ("Resolution 7002"), requesting that the Senate void the special election.  (2d. Am. Compl. 8, ¶

---

[2]    Roland also filed a complaint in the Shelby County Chancery Court, but it was dismissed on November 29, 2005.

[3]    The State Coordinator of Elections determined that six of the voters were not eligible.  (2d. Am. Compl. 5, ¶ 5.)  Specifically, three of those voters were convicted felons, two were deceased at the time of the special election, and one did not live in the district.   (2d. Am. Compl. 5, ¶ 5.)   There were also questions about two other voters.  (2d. Am. Compl. 5, ¶ 5.)  Further, there were other voters that Roland questioned the validity of their votes.  (2d. Am. Compl. 6, ¶¶ 6–7.)

14.)  The Senate, sitting as a Committee of the Whole, voted in favor of sending proposed Resolution 7002 to the Senate for a full senatorial vote.  (2d. Am. Compl. 9, ¶ 15.)  Accordingly, the Committee of the Whole's recommendation was set to be presented to the Senate for a final vote on January 19, 2006, the date when the Senate was to reconvene.  (2d. Am. Compl. 9, ¶ 15.)

On January 18, 2006, the day before the vote was to be held on Resolution 7002, the plaintiffs filed this lawsuit seeking injunctive and declaratory relief against each of the individual senators of the Senate and Roland.   In their complaint, as amended on January 23, 2006,[4] they alleged that the proposed actions of the defendants, i.e. the potential voiding of the special election, would deny the voters their fundamental right to vote and violate various statutes and constitutional provisions: (1) the Equal Protection Clause of the Fourteenth Amendment; (2) the Due Process Clause of the Fourteenth Amendment; (3) the Voting Rights Act of 1965, 42 U.S.C. § 1971;[5]

_____

[4]    The plaintiffs amended their complaint on January 23, 2006, adding two additional voters as plaintiffs and three new causes of action.

[5]    The plaintiffs alleged separate causes of actions under both § 1971 and § 1973 of the Voting Rights Act.

Section 1971 provides:

All citizens of the United States who are otherwise qualified by law to vote at any election by the people in

(4) the Voting Rights Act of 1965, 42 U.S.C. § 1973;[6] and (5) article IV, section 1 of the Tennessee Constitution. (Am. Compl. 11, ¶¶ 23—26.) The plaintiffs sought a declaratory judgment that the voiding of the special election would violate the Federal and Tennessee Constitutions and federal voting rights statutes, and an injunction to enjoin the individual senators from voiding the special election and disqualifying voters. (Am. Compl. 12—13.) The plaintiffs also requested a temporary restraining order to enjoin the defendants from voiding the special election until a hearing could be held. (Compl. 11.)

---

> any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding.

42 U.S.C. § 1971(a)(1) (2006).

[6]   Section 1973 provides:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section [1973b(f)(2) of this title].

42 U.S.C. § 1973(a) (2006).

On January 27, 2006, the plaintiffs amended their complaint a second time, naming the Senate, as an entity, as a defendant and deleting the claims against the thirty-two individual members of the Senate. (*See* 2d. Am. Compl.)  In addition, they named Lt. Governor Wilder as a defendant in his capacity as Speaker of the Senate.[7]  Specifically, the second amended complaint stated that Lt. Governor Wilder was sued in his official capacity as Speaker of the Senate, and that he "signs and authenticates all bills and resolutions passed by The Tennessee Senate." (2d. Am. Compl. 4, ¶ 8.)

The district court entered a temporary restraining order ("TRO") on January 18, 2006, enjoining the defendants from affirming or voiding the special election pending a hearing on the matter.  TRO, *Ford v. Tenn. Senate*, No. 06-2031-BV (W.D. Tenn. Jan. 18, 2006).  The TRO was extended on January 27, 2006, the date of the hearing on the merits, although the extension further allowed the Special Ad Hoc Committee to continue its investigations and make a final recommendation to the Senate. Order Extending TRO, *Ford v. Tenn. Senate*, No. 06-2031-BV (W.D. Tenn. Jan. 27, 2006).

---

[7]   Roland was dismissed as a defendant pursuant to a consent order on January 27, 2006.

On January 24, 2006, the defendants filed a motion to dismiss, alleging that the district court lacked subject matter jurisdiction and that the plaintiffs failed to state a claim upon which relief could be granted. (Defs.' Mot. Dismiss 1.) Likewise, in their answer the defendants contended that the court did not have jurisdiction because there was not a present case or controversy ripe for adjudication and that the plaintiffs' claims against the Senate as a whole and Lt. Governor Wilder in his official capacity as Speaker were barred by the Eleventh Amendment and legislative immunities. (Answer 1.)

The district court held a hearing on January 25, 2006, and subsequently entered its order on February 1, 2006, granting partial relief to the plaintiffs and partially granting the defendants' motion to dismiss. Order, *Ford v. Tenn. Senate*, No. 06-2031-BV (W.D. Tenn. Feb. 1, 2006). The district court found that the court had subject matter jurisdiction based on the plaintiffs' allegations of constitutional and civil rights violations. *Id.* at 4. The court then proceeded with an analysis of whether there was a justiciable case or controversy, finding that even though the Senate had not yet acted by voting on Resolution 7002, the case was ripe for adjudication. *Id.* at 4–13. The district court did not make any decision regarding the immunity of the defendants from suit, however, and instead stated

7

that "in reaching this determination, the Court does not pass on any Eleventh Amendment issues concerning Plaintiffs' amendment of their complaint to allege its causes of action against the Tennessee Senate only." *Id.* at 10 n.3.

Having found subject matter jurisdiction, the district court then addressed the constitutional and statutory issues of Due Process, Equal Protection, and Voting Rights Act violations raised in the plaintiffs' complaint. As to the merits of the case, the district court issued a declaratory judgment that the Senate in voiding the election and excluding the votes of District 29 voters "would raise grave Equal Protection concerns"; that the District 29 voters were "entitled to adequate notice and opportunity to be heard before any prospective disenfranchisement," pursuant to the Due Process Clause; that the defendants must avoid abridging the rights of District 29 voters guaranteed by § 1971 of the Voting Rights Act, 42 U.S.C. § 1971, by disqualifying votes for immaterial errors; and that the Senate must conduct its election contests in keeping with article IV, section 1, of the Tennessee Constitution by utilizing the same election standards in all districts throughout the state. *Id.* at 19, 23, 25, 27. The district court dismissed the plaintiffs' claims under § 1973 of the Voting Rights Act, 42 U.S.C. § 1973, because the plaintiffs failed to show that the defendants'

8

actions were racially motivated, but denied the defendants'
motion to dismiss in all other respects. *Id.* at 26, 31.
Finally, the district court declined to issue a preliminary
injunction or any further injunctive relief against the
defendants. *Id.* at 31.

The Senate took no further action on Resolution 7002 before
the session adjourned in February of 2006.[8] (Pls.' Mem. Supp.
Renewed Mot. for Award 5–6.) On April 17, 2006, the Special Ad
Hoc Committee made its final recommendation that the special
election be voided, and the Senate adopted that new
recommendation and voided the election on April 19, 2006.[9]
(Pls.' Mem. 6.)

The defendants appealed the district court's decision to the
Sixth Circuit, arguing that the district court lacked subject
matter jurisdiction over the plaintiffs' claims and that they are
immune from suit. *Ford v. Wilder*, 469 F.3d 500, 501 (6th Cir.
2006). The Sixth Circuit dismissed the appeal as moot because

---

[8]   The plaintiffs claim that the Senate withdrew Resolution 7002,
while the defendants contend that they did not take an affirmative
step to remove Resolution 7002 from the calendar and instead it
just died when the Senate adjourned.

[9]   The special election was voided through Senate Resolution No.
111. *See* S. Res. 111, 104th Gen. Assem., Reg. Sess. (Tenn. 2006).
The plaintiffs filed a separate lawsuit based on Resolution 111,
*Ford v. Wilder*, No. 06-2241-BP (W.D. Tenn. Apr. 25, 2006), which
was dismissed on July 16, 2007, upon consent of the parties.

Resolution 7002 was no longer before the Senate and the Senate had already voided the special election. *Id.* at 503—05. Instead of vacating the district court's order, the Sixth Circuit "remand[ed] the case to the district court to consider the issue of whether the plaintiffs are entitled to an award of attorney fees." *Id.* at 507.

In the present motion, the plaintiffs seek an award of attorney fees in the amount of $129,338.00. (Pls.' Renewed Mot. 3.) They contend that they are a "prevailing party" and thus are entitled to the award under 42 U.S.C. §§ 1973*l*(e) and 1988(b). (Pls.' Renewed Mot. 3.) In response, the defendants argue that they are immune from suit and, therefore, attorney fees cannot be awarded against them. (Defs.' Resp. 1.) In addition, they claim that the plaintiffs are not entitled to attorney fees because they have failed to substantially prevail in this action. (Defs.' Mem. 6.) Alternatively, the defendants contend that the amount of fees sought by the plaintiffs is unreasonable and should be reduced significantly. (Defs.' Resp. 1—2.)

The plaintiffs filed a reply to the defendants' response. In their reply, they make two unqualified initial concessions: "first, the Senate is not a proper party; and second, the District Court lacked jurisdiction to rule against the State based on the Tennessee State Constitution." (Pls.' Reply to

10

Resp. 3.)   Nevertheless, they contend that Lt. Governor Wilder was subject to suit; he is not protected by the Eleventh Amendment sovereign immunity, nor does he enjoy legislative immunity; and therefore, he remains a proper party from whom they may obtain relief.  (Pls.' Reply 3—11.)

### PROPOSED CONCLUSIONS OF LAW

Courts have discretion to award attorney fees to a "prevailing party" in a § 1983 suit or a Voting Rights Act suit. 42 U.S.C. § 1988(b) provides, "In any action or proceeding to enforce [civil rights statutes], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988(b) (2006).  Similarly, 42 U.S.C. § 1973*l*(e) provides, "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 1973*l*(e) (2006).  The standard for awarding attorney fees is the same under the Voting Rights Act and the Civil Rights Act. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983).

A.   <u>Immunity From Suit</u>

As a preliminary matter, the court must consider jurisdictional issues.  The parties, however, disagreed at the hearing as to whether this court should even address the issue of

11

jurisdiction.  The plaintiffs argued at the hearing that this court should not consider the question of jurisdiction because the Sixth Circuit did not explicitly direct this court to consider jurisdiction on remand, only the issue of attorney fees, thus implying that the Sixth Circuit determined the defendants were proper parties and not immune from suit.  The defendants contended that the reason the Sixth Circuit did not address jurisdiction is that it had to determine justiciability issues first, and when it determined that the case was moot, it could not undertake the jurisdiction analysis.  Further, the defendants argued that implicit in the Sixth Circuit's directive to consider whether the plaintiffs are entitled to attorney fees is the need to initially determine jurisdiction.

A court may only award attorney fees "if it already ha[d] jurisdiction over some other part of the award," such as prospective injunctive or declaratory relief.  *Tenn. Dep't of Human Servs. v. U.S. Dep't of Educ.*, 979 F.2d 1162, 1170 (6th Cir. 1992).  Attorney fees may not be awarded if the defendant was immune or if the plaintiff did not prevail on the merits. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award

against that defendant."); *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 738—39 (1980) (finding error in an award of attorney fees that was based on acts for which the defendants enjoyed absolute legislative immunity); *Tenn. Dep't Of Human Servs.*, 979 F.2d at 1170 & n.6 (recognizing that sovereign immunity, legislative immunity, and judicial immunity all immunize defendants from attorney fees).

An attorney fee award in this case, therefore, would be inappropriate if the named defendants, the Senate and Lt. Governor Wilder, were not proper parties to this suit because they were immune from suit.  Although the district court made a determination of subject matter jurisdiction vis-à-vis the federal statutes, it did not make an explicit jurisdictional finding on whether the Senate and Lt. Governor Wilder were immune from suit.[10]  On appeal, the Sixth Circuit did not address the defendants' argument regarding immunities because its finding that the case was moot prohibited it from addressing further issues.  *See, e.g.*, *Larsen v. Senate*, 152 F.3d 240, 246, 248 (3d

---

[10]     The district court's order stated that in making a determination of causation for standing, it was not "pass[ing] on any Eleventh Amendment issues concerning Plaintiffs' amendment of their complaint to allege its causes of action against the Tennessee Senate only."  Order, *Ford v. Tenn. Senate*, No. 06-2031-BV, at 10 n.3 (W.D. Tenn. Feb. 1, 2006).

13

Cir. 1998) (addressing the legislative immunity arguments only after determining whether the case was justiciable).

This court agrees with the defendants that it is necessary for the court to determine at the outset whether the named defendants are proper parties to the lawsuit or immune from suit because attorney fees are not proper as against immune defendants. The issue of immunities has not yet been ruled on by any court. Immunity deprives the court of jurisdiction and may be raised at any time during the proceeding. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984) (stating that sovereign immunity deprives the court of jurisdiction and as such, may be raised at any time during a proceeding); *Alabama v. Pugh*, 438 U.S. 781, 782 n.1 (1978) (noting that the Eleventh Amendment is a jurisdictional bar and thus does not have to be raised in the trial court to preserve the issue for appeal); *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (raising *sua sponte* the issue of jurisdiction and Eleventh Amendment immunity). Accordingly, this court will undertake an analysis of the applicable law on immunities before deciding whether or not the plaintiffs are entitled to attorney fees and, if so, how much.

    1.   *Sovereign Immunity*

14

The defendants argue that they are protected from suit by the plaintiffs by principles of both sovereign immunity and legislative immunity. (Defs.' Resp. 5–8.) The Eleventh Amendment to the United States Constitution, viewed as the embodiment of the sovereign immunity doctrine, states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI; *Pennhurst*, 465 U.S. at 98–99 (quoting *Ex parte State of New York No. 1*, 256 U.S. 490, 497 (1921)). The Eleventh Amendment applies to states as well as arms of the state, and bars suits against the states for all types of relief. *See Pennhurst*, 465 U.S. at 100; *Pugh*, 438 U.S. at 782. The fundamental principle of sovereign immunity is a Constitutional limitation on federal judicial power under Article III of the Constitution: federal courts do not have authority to entertain suits brought against a state by a private citizen. *Pennhurst*, 465 U.S. at 98.

There are some exceptions to this immunity, however, namely where a state consents to suit in federal court and where Congress has abrogated the Eleventh Amendment immunity. *Pennhurst*, 465 U.S. at 99; *Mixon*, 193 F.3d at 396–97; *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63–64 (1989)

15

(concluding that a state is not a "person" within § 1983, thus § 1983 does not abrogate sovereign immunity).

Sovereign immunity likewise bars suits against state officials if the state is actually the real party in interest, i.e. the relief sought would operate against the state, because those suits are viewed as being against the state itself.[11] *Pennhurst*, 465 U.S. at 101—02; *see Will*, 491 U.S. at 71 (applying same analysis to § 1983 even though state officials are literally "persons").   The Supreme Court, however, has recognized an important limited exception to that rule: "a suit challenging the constitutionality of an official's action is not one against the State." *Pennhurst*, 465 U.S. at 102; *Ex parte Young*, 209 U.S. 123, 159 (1908); *see Will*, 491 U.S. at 71 n.10.   That limited exception from *Ex parte Young*, commonly referred to as the Stripping Doctrine, creates the fiction that the state official is "stripped" of the state's sovereign immunity for purposes of suits against a state official for prospective relief.   *Young*, 209 U.S. at 159—60; *see also Pennhurst*, 465 U.S. at 102.   In the

---

[11]     A suit against an official in his "official capacity" is generally considered as one against the state itself. *Graham*, 473 U.S. at 165—66.   On the contrary, a suit that seeks to impose personal liability upon the official for actions under the color of state law are generally referred to as "personal" or "individual capacity" suits, and is not considered one against the state itself. *Id.* at 165.

16

event that ancillary costs, i.e. attorney fees, are awarded when an official is sued in his official capacity for prospective relief, the state will be responsible for those ancillary costs. *Hutto v. Finney*, 437 U.S. 678, 690–91 (1978); *Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974); *see also Graham*, 473 U.S. at 167–68, 169 n.18 (holding that ancillary costs such as attorney fees are not recoverable from the governmental entity when the state official is sued in their personal capacity); *Pennhurst*, 465 U.S. at 102–03 (emphasizing that retroactive monetary relief is not available); *Tenn. Dep't of Human Servs.*, 979 F.2d at 1169–70 (noting that while the Eleventh Amendment does not restrict attorney fees, "attorneys' fees would only be awarded in regard to prospective relief").

Here, the plaintiffs have conceded unequivocally that the Senate is not a proper party in this litigation, thus the district court erred in granting the plaintiffs relief against the Senate. (Pls.' Reply 3.)  The Senate, as an arm of the state, has not consented to suit.  On the contrary, the Senate raised Eleventh Amendment immunity as an affirmative defense in its answer.  Nor has Congress abrogated its sovereign immunity in enacting § 1983 of the Civil Rights Act.[12]  Therefore,

---

[12]   The Sixth Circuit has held that the Voting Rights Act does abrogate the states' sovereign immunity. *Mixon*, 193 F.3d at 398. The abrogation of sovereign immunity is not relevant in the present case, however.  In the same opinion, the Sixth Circuit noted that

jurisdiction over claims against the Senate, including any claims of relief for attorney fees, are barred by the Eleventh Amendment.

That leaves Lt. Governor Wilder as the sole remaining defendant for this motion requesting an attorney fees award. The plaintiffs' second amended complaint named him as a defendant based on his duty of signing Resolution 7002 in his role as Speaker of the Senate. Although as a state official he falls under the Eleventh Amendment's safeguards, in this situation the suit alleges constitutional violations and thus "strips" him of the state's sovereign immunity, subjecting him to suits seeking prospective relief. Any ancillary costs to the prospective relief, i.e. attorney fees, sought against him in his official capacity are therefore not barred by the Eleventh Amendment

---

an individual may bring a private cause of action under § 1973 of the Voting Rights Act; however, only the Attorney General may properly bring a cause of action against the state under § 1971 of the Voting Rights Act, making an individual's private cause of action under that section improper. *Id.* at 406 & n.12. As the district court in the present case dismissed the plaintiffs' cause of action under § 1973, leaving only § 1971, the Senate's sovereign immunity is not abrogated because the plaintiffs are not the proper parties to bring an action pursuant to § 1971. In any event, the Senate would be immune from suit under legislative immunity, barring any prospective and/or attorney fees awards against it. *See Sup. Ct. of Va.*, 446 U.S. at 734 (applying legislative immunity to the entity and the individual members of the entity); *see also infra* for the discussion on legislative immunity.

notwithstanding that the state would be responsible for paying those costs.

    2.  *Legislative Immunity*

Although the Eleventh Amendment does not shield Lt. Governor Wilder from suit, if he is entitled to legislative immunity, he would not be subject to an order awarding attorney fees to the plaintiffs.  Legislative immunity derives from the Speech and Debate Clause of the U.S. Constitution.  U.S. CONST. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place.");  *see generally Tenney v. Brandhove*, 341 U.S. 367 (1951).  It protects legislators from being subject to suit for legislative acts taken in their legislative capacity.  *Kilbourn v. Thompson*, 103 U.S. 168, 202—04 (1881); *see also Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (applying legislative immunity to local legislators); *Tenney*, 341 U.S. at 376—77 (applying legislative immunity to state legislators).  Legislative immunity bars all types of relief, including prospective relief and attorney fees awards.  *Sup. Ct. of Va.*, 446 U.S. at 731, 738—39; *see Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).  Judicial immunity, contrary to legislative immunity, does not bar declaratory relief against judicial officers acting within their

judicial capacity.[13]  *See* 42 U.S.C. § 1983; *Sup. Ct. of Va.*, 446 U.S. at 734—35.

At the hearing, the defendants argued that legislative immunity applies because the duties performed by the Senate in deciding an election contest were entrusted to them as legislators and that their investigatory actions are part of legislative activity.  The plaintiffs contended legislative immunity does not apply to Lt. Governor Wilder under the circumstances and that the only immunity that would arguably apply is judicial immunity, which would not protect Lt. Governor Wilder from the relief sought by the plaintiffs.  (Pls.' Reply 7.)  According to the plaintiffs, the Senate's acts in deciding an election contest were judicial in nature, even though in submitting Resolution 7002 they acted in a legislative manner. (Pls.' Reply 8—9.)

To determine if the Senate and Lt. Governor Wilder were acting in a legislative or judicial capacity, the court must use

---

[13]   At one time, all prospective injunctive relief was not barred as against judicial officers.  *Pulliam v. Allen*, 466 U.S. 522, 541—42 (1981), *superseded by statute*, Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (codified as amended at 42 U.S.C. § 1983 (2006)).  Now injunctive relief is barred with limited exceptions, as provided in § 1983: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.

a functional approach and look at the nature of the act, rather than the character or nature of the body or the officer's intent. *See Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908); *see also Bogan*, 523 U.S. at 54–55 (finding non-legislative officials' acts to be legislative because they were "integral steps in the legislative process," thus entitling them to legislative immunity); *Sup. Ct. of Va.*, 446 U.S. at 734 (finding that the judicial officers were legislatively immune for acts performed within their legislative capacity); 7 Op. Tenn. Att'y Gen. 157 (1978), 1978 Tenn. AG LEXIS 297, at *2 (noting that it is well-settled that the Governor acts "legislatively" in granting or withholding his approval of a bill, regardless of his role as the executive of the state).  The preliminary acts, i.e. hearings and investigations, are not determinative of whether it is legislative or judicial; instead, it is the nature of the final act that is the deciding factor. *Prentis*, 211 U.S. at 227; *see, e.g., Eastland*, 421 U.S. at 504 (finding that the power to investigate is inherent in the power to legislate because information is necessary to legislate wisely and effectively); *Larsen*, 152 F.3d at 250–51 (recognizing that though impeachment proceedings have a "judicial character," they are regardless a legislative matter).

The Supreme Court has held that legislators enjoy absolute immunity if their actions fall within the "sphere of legitimate legislative activity." *Tenney*, 341 U.S. at 376; *Bogan*, 523 U.S. at 54. Matters other than "speech and debate" are within the "sphere of legislative activity" when they are an "integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972); *accord Eastland*, 421 U.S. at 504. Legislative immunity will attach in fields where legislators traditionally have power to act. *See Tenney*, 341 U.S. at 379 (finding defendants were not subject to civil liability); *see also Powell v. McCormack*, 395 U.S. 486, 501—06 (1969) (applying legislative immunity in suit challenging House's refusal to seat an elected member). The Senate has traditionally had the power to determine election contests. *See* TENN. CONST. art. II, § 11 (explicitly affording the Senate with the power to "be judges of the qualifications and election of its members."); TENN. CODE ANN. § 2-17-102 ("Contests for the office of senator in the general assembly are decided by the senate . . . ."). The flexible definition of what is included within the

22

sphere of legitimate legislative activity is in keeping with the purpose of the legislative immunity——to ensure that individual legislators are not distracted or hindered in the deliberative legislative process by being called to court. *See Eastland*, 421 U.S. at 502; *Gravel*, 408 U.S. at 616, 625; *Powell*, 395 U.S. at 505.

Here, it was the enactment of Resolution 7002 that the plaintiffs sought to enjoin, not the Special Ad Hoc Committee's investigations. While this court finds that the investigation is of a legislative nature, *see Eastland*, 421 U.S. at 504, even assuming arguendo that the nature of the Special Ad Hoc Committee and its investigation was not legislative, the Senate's act of proposing and voting on Resolution 7002 is legislative in nature. *See Prentis*, 211 U.S. at 227 ("[W]hen the final act is legislative the decision which induces it cannot be judicial in the practical sense, although the questions considered might be the same that would arise in the trial of a case."). It does not matter that initially the review was styled as a judicial case or that it was to resolve a dispute between two parties. In the end, the final act was Resolution 7002, which concerned an area where the legislative has traditionally been afforded the power to act, namely an election contest. Accordingly, this court

finds that all of the activities complained of in the present
case are of a legislative nature.[14]

Finding that the acts complained of are legislative in
nature does not end the inquiry, as Lt. Governor Wilder is not
immune if his individual actions as Speaker of the Senate are
considered "ministerial."  All acts performed in a legislator's
official capacity are not automatically legislative in nature.
*Gravel*, 408 U.S. at 625.  A legislator does not enjoy absolute

---

[14]   The district court found that *Younger* Abstention Doctrine was
inapplicable because the Senate's proceedings were not "judicial
proceedings" as follows:

> In this case, the *Younger* doctrine is inapplicable
> because the Senate proceedings are not judicial
> proceedings.  Although "judicial proceedings" has been
> interpreted to include not only court proceedings but
> also administrative proceedings that are judicial in
> nature, Justice Scalia expressly declared that the
> doctrine has never been "extended to proceedings that are
> not judicial in nature."  New Orleans Public Service,
> Inc. v. Council of City of New Orleans, 491 U.S. 350, 370
> (1989).  Judicial inquiry has been stated by the Supreme
> Court to investigate, declare and enforce liabilities "as
> they stand on present or past facts and under laws
> supposed to already to exist."  Id.  Judicial proceedings
> also have a distinct adversarial nature involving a
> certain degree of protections including the opportunity
> to have the ultimate determination rendered by an
> impartial third party.  This key protection is absent
> from the legislative body's proceedings, therefore they
> are not judicial in nature.

Order, *Ford v. Tenn. Senate*, No. 06-2031-BV, at 29 (W.D. Tenn. Feb.
1, 2006).  At the hearing, the plaintiffs argued that the district
court correctly determined that the *Younger* doctrine did not apply
but incorrectly determined that the actions of the defendants
complained of in the complaint were not judicial proceedings.

immunity when his actions are "ministerial." *Bogan*, 523 U.S. at 50 n.4, 51—52 (noting the distinction between discretionary duties, which are protected, and ministerial duties, which are not protected); *see, e.g.*, *Powell*, 395 U.S. at 504—06 (noting that although the individual Congressmen were entitled to immunity for the act of adopting the resolution, Congressional employees were not immune from suit regarding the execution of the resolution).  A legislator's actions are "ministerial" when the act is mandatory and the legislator enjoys no discretion when performing the act.  *Bogan*, 523 U.S. at 51; *see* BLACK'S LAW DICTIONARY 448 (2d. ed. pocket 2001) (defining "ministerial" as "[o]f or relating to an act that involves obedience to instructions or laws instead of discretion, judgment, or skill").

The Tennessee Constitution states that a bill becomes a law after it has passed in each House, "when the respective speakers have signed the bill," and when the Governor has approved the bill or the bill has otherwise passed.  TENN. CONST. art. II, § 18.  The signing of the bill by the speakers is a mandatory step in the legislative process before the legislation is presented to the Governor and it serves to notify the Governor that the bill or resolution has been passed.  *See* TENN. CODE ANN. § 3-2-102(a).  The Speaker of the Senate does not have the ability or discretion to veto bills or resolutions once has passed in the Senate.  *See*

25

7 Op. Tenn. Att'y Gen. Tenn. 157 (1978), 1978 Tenn. AG LEXIS 297, at *4 (finding no authority that would allow anyone other than the Governor to veto legislation).

This court concludes therefore that the signing of legislation in Tennessee after the respective house has passed it is a ministerial duty. *See Hill v. State*, 73 Tenn. 725, 728—29 (Tenn. 1880) (discussing when a bill becomes law, and noting that "the duty performed by the speaker is signing the statutes is not of a legislative but ministerial duty") (citing *Dyer v. State*, 19 Tenn. (1 Meigs) 237, 255 (Tenn. 1838)); *accord Kavanaugh v. Chandler*, 72 S.W.2d 1003, 1005 (Ky. 1934). The signing of a bill by Lt. Governor Wilder does not involve any discretion or exercise of judgment on his part, nor is it an "an integral part of the deliberative and communicative processes." Instead, this is a requirement that must be performed subsequent to the deliberations in the Senate and the voting on the proposed legislation. Further, the individual senators are not distracted or hindered in performing their legislative tasks, i.e. deliberations and exercising discretion in voting, by the commencement of suit against the Speaker of the Senate seeking to prohibit him from signing the legislation before it is presented to the Governor.

26

While Lt. Governor Wilder is a state senator who was able to exercise his discretion in voting for or against Resolution 7002, he was sued as a defendant in the present suit in his capacity as Speaker of the Senate, who signs and authenticates proposed legislation.  Accordingly, this court finds that Lt. Governor Wilder does not act in his legislative capacity in signing bills or resolutions because that act is ministerial,[15] thus he is not afforded legislative immunity for that act under the Speech and Debate Clause of the U.S. Constitution and can be liable for the plaintiffs' attorney fees.

B.    <u>Attorney Fees</u>

As this court has determined that Lt. Governor Wilder is subject to suit for prospective relief and therefore can be liable for attorney fees, the next issue to consider is whether the plaintiffs are entitled to an award of attorney fees.  The plaintiffs argue that they are a "prevailing party," even though they were only granted partial relief.  The defendants disagree and contend that the plaintiffs did not prevail against Lt. Governor Wilder.

---

[15]    If he had been individually named in his role as a state senator, and not just in his role as Speaker of the Senate, he would be subject to legislative immunity because of his discretion and right to vote on the proposed Resolution.

27

Status as a "prevailing party" is a threshold determination that must be made before considering the reasonableness of an actual fee award. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989); *Hensley*, 461 U.S. at 433. A "prevailing party" is one that succeeded on a significant issue in the suit, thus achieving a benefit they sought. *Garland*, 489 U.S. at 791—92; *Hensley*, 461 U.S. at 433. "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties," in that the defendant's behavior is modified to the direct benefit of the plaintiff. *Garland*, 489 U.S. at 792—93; *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. Bissell*, 210 F.3d 595, 597 (6th Cir. 2000) (citation omitted). If the success can be characterized as "de minimis," the court can conclude that the plaintiffs did not prevail. *Garland*, 489 U.S. at 792. In considering the plaintiff's "prevailing party" status in suits with multiple defendants, the court must make separate determinations of whether or not the plaintiff prevailed against each defendant. *Hines v. Marion County Election Bd.*, 166 F.R.D. 402, 408 (S.D. Ind. 1995).

Here, the plaintiffs were only partially successful. They obtained partial relief in the form of a declaratory judgment on some of their claims but did not obtain temporary or permanent

28

injunctive relief.   Although partial relief in the form of a declaratory judgment may be sufficient to deem a plaintiff a "prevailing party," *see Hewitt v. Helms*, 482 U.S. 755, 761 (1987), in the present case the declaratory judgment did not alter the relationship between the plaintiffs and Lt. Governor Wilder.   *See, e.g.*, *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (holding that declaratory judgments "will constitute relief, for purpose of § 1988, if, and only if, it affects the behavior of the defendant against the plaintiff").   The declaratory judgment only altered the relationship with the Senate because it stated that the Senate could not violate the voters' constitutional rights or federal statutes; thus, it was in reality only partial relief against the Senate.

Specifically, the declaratory judgment spoke to the Due Process and Equal Protection Clauses of the Fourteenth Amendment. It also issued a declaration as to § 1971 of the Voting Rights Act, but an award of declaratory relief to the plaintiffs under § 1971 of the Voting Rights Act was improper because § 1971 does not allow private citizens to pursue claims under that section of the Voting Rights Act.   Nor is the declaratory relief on the plaintiffs' Tennessee constitutional claim of any consequence because the plaintiffs have conceded that the district court lacked jurisdiction over the plaintiffs' Tennessee constitutional

violation claims.   In addition, the district court dismissed the
cause of action under § 1973 of the Voting Rights Act.   In sum,
of their five causes of action, the plaintiffs only succeeded in
obtaining  declaratory  relief  on  two,  violations  of  the  Due
Process and Equal Protection clauses of the Fourteenth Amendment,
and then only as against one of the two defendants, the Senate.
The  declaratory  relief  against  the  Senate,  however,  is  of  no
consequence   in   determining   the   degree   of   success   of   the
plaintiffs relative to Lt. Governor Wilder, because, as discussed
herein, the Senate was not a proper party.

     While technically the plaintiffs obtained declaratory relief
against Lt. Governor Wilder on two of their claims because the
district   court   did   not   dismiss   him   as   a   defendant,   the
declaratory  judgment  did  not  make  any  declarations  specifically
as to Lt. Governor Wilder's duty to sign Resolution 7002.    In
fact, the plaintiffs never requested separate and specific relief
from  Lt.  Governor  Wilder,  and  the  district  court's  order  never
mentioned him by name or in terms of his role as Speaker of the
Senate.    The  district  court's  conclusion  spoke  only  of  the
Senate:

          [T]he Senate may not exclude the votes of citizen whose
          residency is challenged without affording such citizen
          fundamental  due  process  considerations  of  notice  and
          opportunity . . . .   While the Senate has the right to
          decide the election contest, the Senate may not apply a

30

> different standard post-election for judging the ballot
> than was applied pre-election. . . .  The Senate must
> apply uniform, non-arbitrary, objective standards for
> determining and defining a legal vote.

Order, *Ford v. Tenn. Senate*, No. 06-2031-BV, at 30 (W.D. Tenn.
Feb. 1, 2006).

The declaratory judgment also did not indirectly make any
declarations against Lt. Governor Wilder.  In his role as Speaker
of the Senate, for which he is named as a defendant, Lt. Governor
Wilder did not play a part in determining whether or not to void
the special election.  It follows then that if he did not
participate in that determination through his role as Speaker of
the Senate, the declaratory judgment did not operate as against
him.  Further, Resolution 7002 was not before Lt. Governor Wilder
at the time the district court entered the declaratory judgment,
so that any arguable relief as against Lt. Governor Wilder did
not directly benefit the plaintiffs at the time of the judgment.
*See Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("Whatever relief
the [party] secures must directly benefit him at the time of the
judgment or settlement.").  Thus, it did not modify his behavior
in a way that directly benefitted the plaintiffs at the time of
the judgment.

In addition, the district court declined to grant an
injunction against Lt. Governor Wilder.  As already discussed,

Lt. Governor Wilder's signing is a ministerial task that affords him no discretion; he has no veto power and thus was not able to make determinations that could violate the voters' rights as discussed in the declaratory judgment.   To prevail against Lt. Governor Wilder as Speaker of the Senate, the plaintiffs would have had to obtain an injunction against him to prevent him from signing Resolution 7002 if the Senate had approved it.[16]

The district court did not enjoin Lt. Governor Wilder from signing anything nor did the district court declare that Lt. Governor should not sign the bill.[17]   Accordingly, declaratory judgment was not a success as against Lt. Governor Wilder, or at best a "de minimis" success, and therefore plaintiffs were not "prevailing parties" as to Lt. Governor Wilder.   Any success that the plaintiffs may have enjoyed was against the Senate, an improper party.   The partial relief against the Senate is not

---

[16]    The resolution ultimately adopted by the Senate and signed by Lt. Governor Wilder was not Resolution 7002.

[17]    Although the district court did grant a TRO before Lt. Governor Wilder was named as a defendant and then extended the TRO after Lt. Governor Wilder was named as a defendant in the second amended complaint, the TRO was merely for the purpose of maintaining the status quo and is not considered success on the merits.  *See Libby v. Ill. High Sch. Ass'n*, 921 F.2d 96, 99—100 (7th Cir. 1990) (holding that because the district court did not rule on the merits in granting the plaintiff's request for a TRO, the district court properly concluded that the plaintiff was not a prevailing party for purposes of an award of attorney fees pursuant to § 1988).

adequate to justify an award of attorney fees against Lt. Governor Wilder as a separate defendant.

Because this court has found that the plaintiffs are not entitled to an award of attorney fees as a "prevailing party," it is not necessary to make a determination of the reasonableness of the requested amount of attorney fees.

## CONCLUSION

For the foregoing reasons, it is recommended that the plaintiffs' renewed motion for attorney fees, costs, and expenses be DENIED in its entirety, and the plaintiffs bear their own attorney fees, costs and expenses.

RESPECTFULLY SUBMITTED this 15th day of August, 2007.


s/ Diane K. Vescovo
UNITED STATES MAGISTRATE JUDGE



## NOTICE

ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN TEN (10) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.

ANY PARTY OBJECTING TO THIS REPORT MUST MAKE ARRANGEMENTS FOR A TRANSCRIPT OF THE HEARING TO BE PREPARED.